IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PREVMED, INC., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:14-CV-3960-D |
| VS. | § | |
| | § | |
| MNM-1997, INC. d/b/a as ORAQUEST | § | |
| DENTAL PLANS, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action arising from the termination of a contract for the provision of dental services to patients at skilled nursing facilities ("SNFs"), defendants move to transfer the case to the Houston Division of the Southern District of Texas under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, in the interest of justice. For the reasons that follow, the court grants the motion.

I

Because this case is the subject of a prior memorandum opinion and order, *PrevMED, Inc. v. MNM-1997, Inc.*, 2015 WL 4162729 (N.D. Tex. July 10, 2015) (Fitzwater, J.) ("*PrevMED I*"), the court will limit its discussion of the background facts and procedural history to what is pertinent to this decision.

Plaintiffs Mid America Professional Group, P.C. ("MAPG"), PrevMED, Inc. ("PrevMED"), and Mid America Health, Inc. ("MAH") operate together to provide dental services to patients at SNFs throughout Texas. In March 2011 PrevMED entered into a

contract ("Contract") with defendant MNM-1997, Inc. d/b/a OraQuest Dental Plans ("OraQuest"), under which OraQuest agreed to be the underwriting insurer for insurance policies that covered the dental health services PrevMED provided.  Although OraQuest and PrevMED operated under the Contract without issue for three years, on September 29, 2014 OraQuest informed Prevmed that, as of October 1, 2014, OraQuest would no longer pay for services that MAPG provided.

Plaintiffs allege that in the months preceding the termination of the Contract, defendants embarked on a "carefully orchestrated coup," with the aim of "cutting out the middleman" and taking over PrevMED's business.  *Id.* at \*2 (brackets omitted).  They allege that OraQuest urged PrevMED clinicians to violate their contractual obligations to PrevMED; contacted PrevMED employees and falsely represented that the termination of OraQuest's affiliation with PrevMED did not affect PrevMED employees' provision of services, and directed dentists and hygienists to continue with their regularly-scheduled visits; made false statements to SNFs claiming continued affiliation with PrevMED; and requested, under false pretenses, PrevMED's marketing and scheduling materials and a list of facilities served by PrevMED providers so that it could pass itself off as PrevMED or an affiliate, mimic the PrevMED services, send OraQuest providers to PrevMED appointments, and usurp PrevMED's role in their existing business relationship.

Plaintiffs sued OraQuest, First Continental Life & Accident Insurance Co. d/b/a FCL

Dental ("FCL"),[1] James Amos Taylor ("Taylor"),[2] and Seung Yop "Paul" Kwauk ("Kwauk")[3] in this court, asserting claims under federal and state law.  In *PrevMED I* the court granted defendants' motion to dismiss plaintiffs' claims brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), and Tex. Ins. Code Ann. § 541.151 (West 2009).  Defendants now move under 28 U.S.C. § 1404(a) to transfer this case to the Houston Division of the Southern District of Texas.

## II

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.*, 569 F.Supp. 1131, 1137 (S.D. Tex. 1983)).  "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other."  *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (citing *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.)).  Moreover,

---

[1]Plaintiffs allege FCL is the parent and operator of OraQuest; defendants contend FCL is the successor by merger of OraQuest.

[2]Taylor is the president of FCL and CEO of OraQuest.

[3]Kwauk is the COO of FCL and a member of OraQuest's board of directors.

> [t]he plaintiff's choice of venue is . . . entitled to deference, and
> therefore the party seeking transfer has the burden to show good
> cause for the transfer.    The burden on the movant is
> "significant," and for a transfer to be granted, the transferee
> venue must be "clearly more convenient than the venue chosen
> by the plaintiff."

*AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at *1 (N.D. Tex. Mar.

24, 2009) (Lynn, J.) (footnotes omitted) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d

304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*")).

The court must decide as a preliminary question "whether the judicial district to which

transfer is sought would have been a district in which the claim could have been filed."  *In

re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*" ); *see

also Volkswagen II*, 545 F.3d at 312 ("The preliminary question under § 1404(a) is whether

a civil action 'might have been brought' in the destination venue.").  Once the court resolves

this issue, it must in deciding whether to transfer the case evaluate "a number of private and

public interest factors, none of which are given dispositive weight." *Volkswagen I*, 371 F.3d

at 203 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir.

2004)).

> The private concerns include: (1) the relative ease of access to
> sources of proof; (2) the availability of compulsory process to
> secure the attendance of witnesses; (3) the cost of attendance for
> willing witnesses; and (4) all other practical problems that make
> trial of a case easy, expeditious and inexpensive.  The public
> concerns include: (1) the administrative difficulties flowing
> from court congestion; (2) the local interest in having localized
> interests decided at home; (3) the familiarity of the forum with
> the law that will govern the case; and (4) the avoidance of
> unnecessary problems of conflict of laws [or] the application of

foreign law.

*Id.* (citations omitted). "Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. Defendants must establish "good cause" for transferring the case, meaning that, "in order to support [their] claim for a transfer, [they] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (final brackets in original) (quoting § 1404(a)).

### III

The parties do not dispute, and the court holds, that plaintiffs could have brought this lawsuit in the Houston Division of the Southern District of Texas. For venue purposes, all the defendants in this case "reside" either in Sugar Land, Texas or Richmond, Texas,[4] both of which are located in Fort Bend County, which is within the Houston Division of the Southern District of Texas. *See* 28 U.S.C. § 124(b)(2).

### IV

Before addressing the public and private interest factors, the court determines the weight to be accorded plaintiffs' choice of forum. "A plaintiff's choice is normally entitled to deference, but when [it] files suit outside [its] home forum, the weight accorded to the

---

[4]The two corporate defendants are Texas corporations that maintain their principal places of business in Sugar Land, Texas. Under 28 U.S.C. § 1391(c)(2), corporate defendants are deemed to "reside," for venue purposes, in any judicial district in which they are subject to the court's personal jurisdiction with respect to the civil action in question. It is undisputed that the two corporate defendants are subject to personal jurisdiction in the Southern District of Texas.

- 5 -

choice is diminished." *Sivertson*, 2011 WL 4100958, at *4 (citations omitted). Plaintiffs'

choice of the Northern District of Texas is not entitled to significant weight. Plaintiffs are

based in Indiana and Maryland, and although some of the SNFs are located in the Northern

District, a larger number are located in the Southern District. Accordingly, the court gives

less deference to plaintiffs' initial choice of forum. *See, e.g., Rimkus Consulting Grp., Inc.

v. Balentine*, 693 F.Supp.2d 681, 690-91 (S.D. Tex. 2010) ("Although a plaintiff's initial

choice of forum is entitled to deference, the degree of deference is higher when he has chosen

his home forum. Conversely, when a plaintiff is not a resident of the chosen forum, or when

the operative facts underlying the case did not occur in the chosen forum, a court gives less

deference to a plaintiff's choice." (citations omitted)).

V

The court next considers the private interest factors.

A

The first private interest factor examines the relative ease of access to sources of

proof. Defendants maintain that this factor favors transfer to the Southern District of Texas

because defendants and their employees all reside in and around the Houston area, and the

relevant documents and other physical evidence that plaintiffs will require to meet their

burden of proof are maintained at defendants' Houston-area headquarters. Defendants also

contend that at least 28 of the SNFs involved in this case are located within the Houston

Division of the Southern District of Texas, and while access to some sources of proof

presents a lesser inconvenience now than it might have in the past given technological

developments, this factor is not irrelevant. Plaintiffs respond that this factor is neutral because all documents and communications can be accessed electronically, and the parties have already exchanged the vast majority of the relevant documents.

The court holds that this factor weighs slightly in favor of transfer. "Although the technological convenience of e-discovery may diminish concerns associated with the location of evidence, it does not negate the significance of or eliminate consideration of this factor in a section 1404(a) transfer analysis." *Smith's Consumer Prods., Inc. v. Fortune Prods., Inc.*, 2015 WL 1037419, at *2 (N.D. Tex. Mar. 9, 2015) (Kinkeade, J.) (citations omitted); *see also Davis v. City of Fort Worth*, 2014 WL 2915881, at *3 (N.D. Tex. June 25, 2014) (Fitzwater, C.J.) ("Regardless whether technological advances and email service would make litigating this case in the Dallas Division *possible*, there is still a *greater* ease of access to sources of proof in Fort Worth."). And in this case, plaintiffs point to no known documentary evidence that originated in the Northern District of Texas. *See Smith's Consumer Prods.*, 2015 WL 1037419, at *2. Accordingly, the court concludes this factor weighs slightly in favor of transfer.

B

The second private interest factor examines the availability of compulsory process over witnesses. Defendants maintain that it is currently unknown whether compulsory process will be necessary to secure the attendance of any lay witnesses. They posit that, to the extent compulsory process is necessary, at least two key nonparty witnesses—Timothy Bradbury ("Bradbury") and Georgia Lee ("Lee")—reside more than 100 miles from Dallas,

but within 100 miles of Houston, so they would be outside the subpoena power of this court but could be compelled to testify at trial in Houston.  Ds. Br. 8 (citing Fed. R. Civ. P. 45(c)(1)(A)).  Plaintiffs respond that this factor weighs against transfer because all of the nonparty witnesses whom defendants have identified with particularity reside or work in Texas, and, under Rule 45(c)(1)(B), this court has subpoena power over each such witness.

In light of defendants' failure to identify any nonparty witnesses for whom compulsory process would be necessary, the court finds this factor to be neutral.  *See Sivertson*, 2011 WL 4100958, at *5 (finding second factor was neutral because defendants failed to identify any witnesses for whom compulsory process would be needed).

C

The third private interest factor considers the cost of attendance for willing witnesses. This factor "primarily concerns the convenience of nonparty witnesses."  *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (declining to consider parties' employees under third factor).  A party seeking a transfer must "identify the 'key witnesses and the general content of their testimony.'"  *Sargent v. Sun Trust Bank, N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quoting *Bank One*, 211 F.Supp.2d at 812).  "'The party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover .'"  *AllChem Performance Prods., Inc. v. Oreq Corp.*, 2013 WL 180460, at *4 (N.D. Tex. Jan. 17, 2013) (Fitzwater, C.J.) (quoting 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*

- 8 -

§ 3851, at 221-22 (3d ed. 2007)); *see Magana v. Toyota Motor Corp.*, 2010 WL 5108850, at *2 (N.D. Tex. Dec. 6, 2010) (Boyle, J.) (finding that defendant failed to show good cause for transfer based on this factor because it did not provide name, address, or proposed testimony of any witness who could more conveniently testify in the proposed transferee district). Although not determinative, this is the most significant factor in deciding a motion to transfer. *See Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt. (Ams.), Inc.*, 2007 WL 268808, at *3 (N.D. Tex. Jan. 29, 2007) (Fitzwater, J.).

According to the defendants, all of plaintiffs' witnesses reside either in Maryland or Indiana, while all of defendants' employees and former employees identified in the amended complaint—specifically, Kwauk, Taylor, Andrea Suarez, Danielle Guevara, Donna Vogler, Vanessa Jones, and Rhonda Johnson—reside in and around Houston. Defendants also point to several nonparty witnesses who reside in the Houston Division of the Southern District of Texas: Bradbury, who resides in Sugar Land, is expected to testify regarding his conversations with defendants as well as the services he performed on behalf of plaintiffs and defendants at SNFs located in and around Houston; Lee, who resides in Pearland (approximately 16 miles from Houston), is expected to testify regarding the communications plaintiffs describe in the amended complaint, as well as her dealings with plaintiffs and defendants generally; and "H.B. from SNF H.V.," ("H.B.") who defendants presume resides in Huntsville (approximately 72 miles from Houston and 171 miles from Dallas), and is expected to testify concerning his communications with plaintiffs and defendants. Defendants also point to two nonparty witnesses who reside closer to Houston than to Dallas:

Ginger Whitley ("Whitley"), who resides in Gonzales (136 miles from Houston and 236 miles from Dallas), is expected to testify concerning communications described in the amended complaint as well as her dealings with plaintiffs and defendants generally; and Harved Patel ("Patel"), who resides in Cedar Park (173 miles from Houston and 183 miles from Dallas) and "J.W. from SNF C.M." ("J.W."), who defendants presume resides in New Braunfels (175 miles from Houston and 236 miles from Dallas), both of whom are expected to testify concerning their communications with plaintiffs and defendants. Defendants contend that only one of plaintiffs' witnesses resides in the Northern District of Texas, and that when balancing the convenience to the witnesses, Houston is clearly more convenient than Dallas.

Plaintiffs respond that, of their list of over twenty-five prospective witnesses, only three are located within the Houston Division of the Southern District of Texas; the remainder are located throughout all of the districts in Texas; and, regardless, each witness will be deposed where the witness works and will not be required to travel to Dallas to be deposed. They point out that Patel resides in Cedar Park, which is in the Western District of Texas, and is only ten miles closer to Houston than Dallas; that Whitley and J.W. both reside in the Western District of Texas; and that as for the remaining three witnesses defendants have identified, none lives more than 260 miles from Dallas. Plaintiffs also contend that the court should not consider the convenience of party witnesses, especially since the round trip from Houston to Dallas for the party witnesses can be made "hassle-free" for less than $200 on any given day. Ps. Br. 5. Finally, plaintiffs posit that, of the 103 SNFs

with which PrevMED had contracts, 33 are located in the Northern District of Texas, 39 are located in the Southern District of Texas, and the remaining 31 are located equally between the Eastern and Western Districts of Texas.  They contend that "it is certain that the Southern District of Texas, Houston Division, is no more of a proper or convenient venue than the Northern District of Texas, Dallas Division," and that while "the Houston Division may be marginally more convenient for Defendants' counsel, this is certainly not a basis for transferring venue."  *Id*. at 6.

The court holds that this factor favors transfer.  It is undisputed that several nonparty witnesses reside in the Houston Division of the Southern District of Texas, and that at least two nonparty witnesses (Whitley and J.W.) reside closer to Houston than Dallas.  Plaintiffs have failed to identify any key witnesses who are located in the Northern District of Texas.  Accordingly, although there may be many other witnesses who reside elsewhere in Texas, defendants have demonstrated that, as between Houston and Dallas, Houston is more convenient for the key witnesses.  Accordingly, this factor supports transferring the case.

D

The fourth private interest factor is a catch-all consideration that includes all other practical problems that make trial of a case easy, expeditious, and inexpensive.  Neither party addresses this factor, so the court concludes it is neutral.

VI

The court now turns to the public interest factors.

A

The first public interest factor evaluates the comparative administrative difficulties due to court congestion in the potential venues.  Defendants point to statistical evidence that there are more cases pending in the Northern District than the Southern District (12,577 vs. 11,666), but that the median time for disposition of civil cases in the Northern District is slightly faster than in the Southern District (6.7 months vs. 6.9 months).  They thus contend that this factor is "at least neutral."  Ds. Br. 10.  Plaintiffs agree that this factor is neutral. Accordingly, the court holds that this factor is neutral.

B

The second public interest factor evaluates the local interest in the dispute.  "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.) (citing *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 792 (S.D. Tex. 2005)).  Defendants contend that plaintiffs have failed to allege that any substantial events relevant to this dispute occurred in the Northern District of Texas or that there is a particular impact on the area; that while many of plaintiffs' allegations relate to communications to SNFs or clinicians at various locations, these communications were indisputably made from in and around Houston where defendants reside; and that because "virtually all of the events occurred in the Houston area," this factor

- 12 -

weighs heavily in favor of transfer.  Ds. Br. 10.  Plaintiffs respond that it is the location of the residents and SNFs affected by defendants' conduct that is of significance to the court's venue analysis—not the location of the defendants themselves when they engaged in that conduct—and that such residents and SNFs are located throughout *all* of the districts of Texas.[5]

The court concludes that this factor weighs in favor of transfer.  Although the location of the residents and SNFs affected by defendants' conduct is important to the court's analysis, the fact that SNFs are located throughout the state does not weigh in favor of retaining this case here.[6]  This is especially so considering the undisputed fact that *all* of defendants' conduct giving rise to this lawsuit occurred in the Southern District of Texas. Accordingly, the court concludes that this factor weighs in favor of transfer.

C

The third factor addresses the familiarity of the forum with the law that will govern the case.  The court finds that this factor is neutral, since the judges in both the Northern and Southern Districts of Texas are equally capable of interpreting and applying the federal law

---

[5]As the court notes above, of the 103 SNFs with which PrevMED had contracts, 33 are located in the Northern District (23 in the Dallas Division), 39 are located in the Southern District (28 in the Houston Division), and the remaining 31 are located equally between the Eastern and Western Districts of Texas.

[6]Moreover, if the court were basing its decision purely on numbers, which it is not, the fact that more SNFs are located in the Southern District than the Northern District and more are located in Houston than Dallas would make this factor weigh slightly in favor of transfer.

and Texas law that applies to plaintiffs' claims.

D

The fourth public interest factor considers the avoidance of unnecessary problems of conflict of laws or the application of foreign law. Neither side argues that there is a problem of conflict of laws or applying foreign laws. The court concludes that this factor is neutral.

E

Considering all the relevant factors holistically, the court holds that the Houston Division of the Southern District of Texas is clearly more convenient when compared to the Dallas Division of the Northern District of Texas. On the one hand, apart from the factors that are neutral, the first and third private interest factors, as well as the second public interest factor, support transfer. On the other hand, plaintiffs have not identified a single factor weighing against transfer. In fact, their only argument against transfer seems to be that, because SNFs are located throughout Texas, the lawsuit should remain here. But "'no [§] 1404(a) factor appears to actually favor maintaining this . . . case in the Dallas Division'" of the Northern District of Texas. *Davis*, 2014 WL 2915881, at *6 (citation omitted). There is nothing in the record that suggests that this case is, in any meaningful way, related to the Dallas Division of the Northern District of Texas when compared with the Houston Division of the Southern District of Texas.

VII

Plaintiffs argue that the court should deny defendants' motion because defendants failed to act with "reasonable promptness" in filing the motion. Defendants respond that the

court should not deny a motion to transfer venue absent a showing of a "dilatory tactic," "prejudice" or the "rare and special circumstances" where transfer would cause yet another delay in an already protracted case, none of which is present here.  Ds. Reply 6 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013)).  Defendants contend that there is no showing that they are seeking a transfer for purposes of delaying the case, that plaintiffs would suffer prejudice, or that a transfer would unreasonably delay this case; they filed the motion to transfer venue on the same day they filed their answer, which they filed promptly after the court resolved their motion to dismiss; the judicial resources expended to date have been necessarily limited to assessing plaintiffs' pleadings in connection with ruling on the motion to dismiss; and a transfer would not result in any delay in this case since none of the deadlines in the court's scheduling order has passed, there is no trial date, and the parties have not engaged in discovery other than to exchange initial disclosures.

"Parties seeking a change of venue should act with reasonable promptness." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (citation and internal quotation marks omitted).  "The delay associated with transfer may be relevant 'in rare and special circumstances,' and [the Fifth Circuit has] found such circumstances present where a 'transfer [of] venue would have caused yet another delay in [an already] protracted litigation.'" *In re Radmax, Ltd.*, 720 F.3d at 289 (quoting *In re Horseshoe Entm't*, 337 F.3d 429, 435 (5th Cir. 2003); *Peteet*, 868 F.2d at 1436).  But "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer," because if it were, "delay would militate against transfer in every case." *Id.*

- 15 -

Plaintiffs filed this suit on November 7, 2014, and they amended their complaint on February 20, 2015. The following month, defendants moved to dismiss the amended complaint. The court granted defendants' motion to dismiss on July 10, 2015, and, two weeks later, defendants filed their answer and motion to transfer. Under the current scheduling order, the parties must complete discovery by May 20, 2016, and summary judgment motions are due July 29, 2016. A trial date has not yet been set. Accordingly, although the motion to transfer was not filed until nearly nine months after plaintiffs filed the lawsuit, the court finds that defendants acted with "reasonable promptness" in seeking a transfer.

\* \* \*

For the reasons explained, defendants' motion to transfer venue is granted, and this case is transferred to the Houston Division of the Southern District of Texas. The clerk of court shall effect the transfer according to the usual procedure.

**SO ORDERED**.

September 30, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE